RECEIVED
SEP 2 9 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JACKIE OSBORNE, JR. AND JOHN DAVID WRIGHT<br>-vs-<br>WAYNE E. BENSON, NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, P.A., AND GOVERNMENT EMPLOYEES INSURANCE CO. | CIVIL ACTION NO. 6:15-CV-02845<br><br>JUDGE DRELL<br><br>MAGISTRATE JUDGE WHITEHURST |

## RULING

Before the Court is the motion of defendant National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"), for summary judgment (Doc. 29) and plaintiffs Jackie Osborne and John David Wright's ("Plaintiffs") cross motion for partial summary judgment. (Doc. 35). Plaintiffs have filed a memorandum in opposition to National Union's motion for partial summary judgment (Doc. 35-1) and National Union has filed a memorandum in opposition to plaintiffs' cross motion, (Doc. 44), and the matter is ready for disposition. For the following reasons, National Union's Motion for Partial Summary Judgment will be **GRANTED** and plaintiff's cross motion for partial summary judgment will be **DENIED**.

I.   **Background and Procedural History**

National Union removed this suit pursuant to diversity jurisdiction under 28 U.S.C. §1332. (Doc. 1, p. 1). Plaintiffs filed the original action on November 9, 2015 in the 13th Judicial District Court (Evangeline Parish, Louisiana), which action was subsequently removed by National Union alleging complete diversity between the parties as National Union is incorporated in Pennsylvania

1

with its principal place of business in New York, defendant GEICO is a Maryland corporation with its principal place of business in Maryland, and defendant Wayne Benson is domiciled in Pensacola, Florida. (Doc. 1, p. 3). Plaintiffs are domiciled in Louisiana. (Doc. 1, p. 2). National Union also urged that Plaintiffs claim damages in excess of $75,000, fulfilling the monetary requirement for diversity jurisdiction. Id.

This suit arises out of an automobile accident which occurred on Interstate 12 in Livingston Parish, Louisiana. (Doc. 1-1, p. 3). On November 10, 2014, Jackie Osborne ("Osborne") and John David Wright ("Wright"), employed by LCS Corrections Services ("LCS") at the time, were driving eastbound on I-12 when Wayne Benson ("Benson") negligently crashed his vehicle into the rear of Osborne's vehicle, causing injury to both Osborne and Wright. Id. Osborne and Wright claim they suffered injuries as a result of Benson's negligent driving and an insurance policy issued through GEICO, which provided liability coverage for Benson's vehicle, did not provide sufficient coverage for the extensive personal injury damages suffered by Osborne and Wright. (Doc. 1-1, p. 5). Osborne and Wright thus brought this suit against their employer LCS' uninsured/underinsured insurer, National Union, under the employer's uninsured/underinsured motorist policy coverages ("UM policy") to recover for their injuries. Id.

National Union filed this motion for partial summary judgment arguing Osborne and Wright cannot carry their burden of establishing National Union's liability under the UM policy because the policy is limited to "Economic-Only" losses. (Doc. 29-2, p. 4). National Union claims the UM/UIM form filed by LCS in December 2009 ("the 2009 UM waiver form") with the 2010 Business Auto Policy selecting "Economic-Only" losses was still valid and part of the renewed policy at the time of the accident in 2014. Id.

Plaintiffs, Mr. Benson and Mr. Osborne, have opposed National Union's motion for partial summary judgment and have filed a cross motion for partial summary judgment. (Doc. 35). Plaintiffs' cross motion agrees, as does National Union's motion, that the dispositive issue before the Court in these two motions is whether or not the 2009 UM waiver form is was in effect at the time of the accident. (Doc. 35-1, p. 4). Plaintiffs argue there was a change to the UM limits of liability in the policy after 2009, requiring a new UM waiver. Id. at 5. Plaintiffs further posit that the original 2009 UM waiver form was legally invalid and contradicts the plain language found in the insurance policy. Id. In response, National Union argues the limits of liability did not change from the 2009 UM waiver form to the date of the accident and therefore the form remained valid at law and in effect and is not facially defective. (Doc. 43).

Having carefully considered both motions, supporting documents, and briefs, we find the following:

## II. Law and Analysis

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the non-movant bears the burden of proof at trial, the movant need not disprove every element of the non-movant's case; rather, the movant can satisfy his burden by pointing to the absence of evidence to support the non-movant's case. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Further, we consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted). In this analysis, we review facts and draw all inferences most favorable to the nonmovant; "[h]owever, mere conclusory allegations are not

competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Distinguishing limits of liability v. UMBI coverage

UM/UIM coverage in Louisiana is set forth in Louisiana Revised Statute 22:1295. The Louisiana legislature promulgated guidelines for a valid waiver of UM/UIM coverage by stating:

> …rejection, selection of lower limits or selection of economic-only coverage shall be made only a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to same named insured by the same insurer or any of its affiliates. . . Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. LA R.S. 22:1295(1)(a)(ii)

This statute governs the requirements for selecting "economic-only" coverage on the proper form, issued through Louisiana Department of Insurance's Bulletin 08-02 ("LDOI Bulletin 08-02"). The purpose of this bulletin "is to issue the revised UM form." (Doc. 29-1, p. 391). The bulletin describes the required form and provide detailed instructions for its proper completion. Id. at 392. Additionally, the bulletin provides a "properly completed and signed UM form executed prior to

4

January 1, 2010 shall remain valid for the life of the policy unless there are modifications to the bodily injury limits of liability or the UMBI coverage." Id.

Plaintiffs contend National Union's 2009 UM waiver form was invalidated as a result of a change in the UMBI coverage of the policy between 2009 and the time of the accident, November 10, 2014. Specifically, LCS's 2009-2010 Business Auto Policy ("2010 Policy")[1] with a liability limit of $1,000,000, contains a section entitled "Louisiana Uninsured Motorists Coverage – Bodily Injury." (Doc. 29-1, p. 52-54). This section modifies the general commercial business automobile policy and addresses the sole issue of Louisiana UM coverage and lists the limit of UM insurance as $100,000. Included with the 2010 policy is a separate UM waiver form signed by Paul Calaway on behalf of LCS on December 31, 2009. The form selects "Economic-Only UMBI Coverage" for $100,000 for each accident/occurrence. (Doc. 29-1, p. 390). The LCS Business Auto Policy was renewed each year through the date of the accident, without any change in the general limits of liability of $1,000,000. (Doc. 29-1). However, absent from the Business Auto Policies for the years 2011 and 2012 is the section entitled "Louisiana Uninsured Motorists Coverage – Bodily Injury[.]"(Doc. 29-1, p. 86-225). The section was added back in for the policy covering years 2013 and 2014, which thus covers the date of the accident in November 2014. (Doc. 29-1, p. 226-393). Plaintiffs claim the exclusions of the text of the "Louisiana Uninsured Motorists Coverage-Bodily Injury" section in the 2011 and 2012 policies constitute a modification in "UMBI Coverage" under LDOI Bulletin 08-02. (Doc. 35-1, p. 7). As a result of the hiatus and subsequent re-inclusion of the section, plaintiffs urge that the 2009 UM waiver form was no longer valid in 2014, and that as a result, "Economic-Only" coverage was no longer applicable and that they are

---

[1] The policies in the instant case have beginning and end dates starting in December of the previous year. Therefore, the 2010 Business Auto Policy starts on December 31, 2009 and ends on December 31, 2010. The 2011 Buisiness Auto Policy begins on December 31, 2010 and ends on December 31, 2011. This applies to all policies involved in this case and this court will refer to each policy as the year it covers, not the year it begins. (Doc. 29-1)

5

entitled to UM coverage in the general amount of liability, that is, $1,000,000. (Doc. 35-1, p. 9). In turn, National Union suggests the 2009 UM waiver form was still valid in 2014 because, despite the absence of the UM section in the policy text for two years, the general limit of liability never changed throughout the life of the policy. (Doc, 29-2, p. 13-14; Doc. 43, p. 6-10). Thus, the policy was still in compliance with state law and the UM, economic loss only, coverage is limited to $1,000,000.

Here, we must observe certain basic principles regarding Louisiana's uninsured motorist coverage, generally. In Louisiana, uninsured motorist coverage is read into an automobile liability policy as a matter of law unless it is specifically rejected or modified under state law provisions. Boyett v. Redland Insurance Company, 741 F.3d 604 (5th Cir. 2014); Duncan v. U.S.A.A. Insurance Company, 950 So.2d 544, 547 (La. 2006) citing Daigle v. Authement, 691 So.2d 1213, 1214 (La. 1997) (affirming Louisiana's strong public policy in favor of uninsured motorist coverage and explaining that such coverage shall be read into any automobile liability policy, absent valid rejection of same). Thus, whether the section was present or not during the annual policy renewals is of no moment especially where, as here, there was specific state provision with the effect of law, allowing a one-time selection to continue forward in each annual renewal. Significantly, Bulletin 08-02 specifically provides and allows for a selection in one year to go forward from year to year provided the underlying liability limits do not change.

The court finds the 2009 UM waiver form was valid through 2014. The pages found in the 2010, 2013, and 2014 policies labeled "Louisiana Uninsured Motorists Coverage-Bodily Injury" are provided simply to state the existence of UM coverage. Their absence in any year, however, does not negate UM coverage under Louisiana law. LDOI Bulletin 08-02 was issued by the Commissioner of Insurance in accordance with LA R.S. §22:1295 to "issue the revised UM

form." (Doc. 29-1, p. 391). The purpose of the form is explained in <u>Guidry v. GEICO General Insurance Company</u>, a case over which our colleague Judge Vance of the Eastern District of Louisiana presided. In that case, Judge Vance found Bulletin 08-02 had been promulgated: (1) to issue the new UM waiver form, (2) list the important form changes, and (3) list the requirements for a completed form. No. CV 15-1548, 2015 WL 9002408, p. 3 (E.D. La. 2015). In that case, Plaintiff argued that the UM waiver form was ambiguous because it did not reference a policy number. <u>Id.</u> However, the court found that Bulletin 08-02 states the policy number was optional on the UM Waiver form and if a UM Waiver form is completed according the directions found on Bulletin 08-02, then the waiver or modification of UM coverage is valid for the life of the policy, including renewals of the policy. <u>Id</u>.

In the present instance, the LCS waiver was validly signed according to the instructions found on LDOI Bulletin 08-02 and is valid for the life of the policy, including renewals, as long as the limit of liability does not increase. In this instance, it is undisputed that the $1,000,000 general liability limit did not change from 2010 to 2014. Therefore, the non-existence of the "Louisiana Uninsured Motorists Coverage-Bodily Injury" sections in the 2011 and 2012 policies did not effect change in UM coverage.

### C. Validity of 2009 UM Waiver Form

Finally, National Union responds that the 2009 UM waiver form was completed correctly under LA R.S. 22:1295(1)(a)(ii) and LDOI Bulletin 08-02. The bulletin, issued to address proper completion of the revised UM form, provides:

> The revised UM form includes two boxes on the lower right hand corner of the form. The upper box contains an area that the insurer may use for policy information purposes. . . This box does not need to be filled in for the form to be properly completed. The lower box must contain one of the following: the individual company name, the group name, or the insurer's logo. . . The following tasks must

> be completed by the insured: 1) His/Her signature, 2) His/Her printed name to identify his/her signature, 3) the date the form is completed, and 4) initials to select/reject UMBI coverage prior to signing the form. . . If the insured selects lower limits (available in options 1 and 3 of the revised UM form) the exact amount of coverage must be printed on the appropriate line on the revised UM form prior to the insured signing the form. LDOI Bulletin 08-02, p. 2-3.

LDOI Bulletin 08-02 was provided by the Commissioner of Insurance under LA R.S. 22:1295(1)(a)(ii) and in response to prior concerns by the courts about what constituted a valid and completed form. (Doc. 2901, p. 391). Since the release of the revised UM form and its implementing Bulletin 08-02, Louisiana state and federal courts have looked to the bulletin to determine what constituted a valid form. *See* Guidry v. GEICO Insurance Company No. CV 15-1548, 2015 WL 9002408, p. 3 (E.D. La. 2015) and Jose Chicas v. John Doe, 166 SO. 3d 238 (La. 5/1/15).

LCS properly signed and completed the 2009 UM waiver form. (Doc. 29-1, p. 390). The lower box contains the insurance group name "Chartis" and was signed by Paul Calaway, with his printed name to identify his signature as LCS' authorized legal representative. Id. The date of completion, December 31, 2009, is properly filled in at the bottom left corner and the initials of Paul Calaway are located next to number 3, selecting only "Economic-Only UMBI Coverage." Id. Because item number 3 was selected, the exact amount of coverage is printed, stating $100,000 for each accident/occurrence. Id. Under the Louisiana Revised Statutes and LDOI Bulletin 08-02, the form, dated December 31, 2009, was indeed valid for the life of the policy. To repeat, the LCS executed form was valid and because the company policy was renewed yearly with no changes to the limit of liability of $1,000,000 from December 31, 2009 to December 31, 2014, the 2009 UM waiver form was entirely valid at the time of the accident.

8

In a final effort to prevent application of the reduced limit, Plaintiffs contend National Union has not provided summary judgment evidence to support its claim that Paul Calaway was an authorized legal representative of LCS. (Doc. 35-1, p. 10). As stated above, LDOI Bulletin 08-02, issued by the Commissioner of Insurance to distribute the UM form, provides the instructions for a complete and valid UM form. It does not contain a requirement for an affidavit, nor any further evidence confirming the name of the authorized representative. (Doc. 29-1). Additionally, Plaintiffs argue National Union's 2009 UM waiver form did not contain policy identification information linking the 2009 UM waiver form to the 2010 Business Automobile Policy. (Doc. 35-1, p. 11). Once again, that is not a requirement under the LDOI Bulletin 08-02's instructions. The Bulletin rather states that while the form contains an area for policy identification information, this area *may* be used by the insurer, and the UM Waiver form itself names this area as "Optional Policy Identification Information." (Doc. 29-1, p. 392; Doc. 29-1, pp. 390). As this policy identification information is not a requirement on the form issued by the Commissioner of Insurance under Louisiana R.S. 22 §1295, we deem the form valid and complete for the life of the policy and its renewals, from December 31, 2009 to December 31, 2014.

### D. Conclusion

For the foregoing reasons, National Union's Motion for Partial Summary Judgment (Doc. 29) will be **GRANTED.** Furthermore, because Plaintiffs have failed to provide evidence of a change in the UMBI coverage or the limits of liability during the renewal periods of the policy, Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. 35) will be **DENIED.**

**SIGNED** on this 29th day of September, 2017 at Alexandria, Louisiana.

                                             **DEE D. DRELL, CHIEF JUDGE**
                                             **UNITED STATES DISTRICT COURT**